IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CHARLES W. McCALL,<br><br>    Defendant.<br> _____ / | No. C 00-00505 WHA<br><br>**ORDER DENYING SECTION 2255 MOTION** |

### INTRODUCTION

Defendant moves to vacate, set aside, or correct his sentence pursuant to Section 2255 on the ground that his trial counsel was constitutionally ineffective. He also requests an evidentiary hearing and to be released on bail pending the resolution of his Section 2255 motion. For the reasons stated below, defendant's Section 2255 motion is **DENIED**. His requests for an evidentiary hearing and release on bail are **DENIED**.

### STATEMENT

The parties agree about the key material facts underlying this motion. Defendant Charles McCall was the chief executive officer of HBOC beginning in January 1991. After the merger of HBOC and McKesson Corporation in 1999, he became chairman of the board of directors of the combined company, McKessonHBOC. On June 3, 2003, defendant was indicted and charged with various counts involving securities fraud. Although defendant was terminated as chairman of the board of directors, McKesson nevertheless committed to paying legal expenses associated with his defense. Defendant retained the law firm of Paul, Weiss, Rifkind, Wharton

& Garrison LLP to represent him, led by attorney Theodore Wells as chief counsel. Paul Weiss also associated with attorney Michael Shepard of Heller Ehrman White & McAuliffe LLP, which later and before its demise became Heller Ehrman LLP, an attorney based in San Francisco, in as much as the action was brought in the Northern District of California.

At his arraignment on June 5, 2003, defendant was advised of the maximum applicable statutory penalties based on the charges against him. In particular, he was told (Reeves Decl., Exh. A, at 4–5):

> And again, the maximum penalty for [Count one] is five years imprisonment; a fine of $250,000; three years of supervised release; $100 special assessment.
>
> For the remaining counts . . . the maximum penalties are ten years of imprisonment; a $1 million fine; three years of supervised release; and a $100 special assessment.

His first jury trial commenced on September 18, 2006, before Judge Martin Jenkins. On November 3, 2006, defendant was acquitted of one count, and the jury was unable to reach a verdict as to the remaining counts of the indictment. As a result, Judge Jenkins declared a mistrial as to the remaining counts (Dkt. No. 719; Dkt. No. 1149, Br. at 9–12). This action was reassigned to the undersigned judge on April 7, 2008, when Judge Jenkins was appointed to the California Court of Appeal (Dkt. No. 748). At all material times, defendant was free on bond.

Attorney Shepard met with government counsel on June 3, 2009, to discuss issues relating to the second trial. In a subsequent email to defense co-counsel summarizing the discussion, Attorney Shepard stated that he believed that the government "[seems] amenable, perhaps even eager, for a resolution of some sort, provided it's a felony plea tied to the guidelines." He was unsure, however, whether defendant "would accept a deal that exposes him to any jail time . . ." (Osterhoudt Decl., Exh. 21). On June 26, 2009, Attorney Shepard met with government counsel again to discuss plea possibilities (Osterhoudt Decl., Exh. 34, at 2). In an email to defense co-counsel, Shepard stated that the government would only consider a "[Rule 11(c)(1)(C) plea agreement] but would tie it down to participation in a select list of transactions [which were not identified] . . . [and would subject defendant to] a much wider range [of sentencing]" (Osterhoudt Supp. Decl., Exh. 36).

2

Following the June 26 meeting, defendant alleges that Attorney Shepard informed him that "the prosecutors were willing to settle [his] case on terms similar to the plea dispositions they had extended to individuals involved in the charges against [him]" and that he should "consider it." At that time, defendant was aware that both individuals were sentenced to prison for two to four years (McCall Decl. ¶ 7). He informed Attorney Shepard that he would reject such a proposal because he "did not want to go to jail" (McCall Decl. ¶ 9).

Defendant's second trial commenced on October 27, 2009, before the undersigned judge (Dkt. No. 930). On November 19, 2009, defendant was convicted of four counts of securities fraud and one count of circumventing account controls. He was acquitted of one count of falsifying books, records and accounts (Dkt. No. 1011). On March 5, 2010, defendant was sentenced to 120 months in prison, along with a three-year term of supervised release following the custodial sentence, a $500 special assessment, and a $1,000,000 fine (Dkt. No. 1080).

Our court of appeals affirmed defendant's convictions on July 5, 2011, and denied his *en banc* petition on October 20, 2011 (Dkts. Nos. 1121, 1130). On June 18, 2012, the Supreme Court denied defendant's petition for writ of certiorari. *McCall v. United States*, 132 S. Ct. 2771 (2012). Defendant timely filed the instant Section 2255 motion on June 17, 2013. After the initial round of briefing was completed, both sides were allowed to submit several rounds of additional briefing. In addition, the Court *sua sponte* requested sworn declarations from defendant's trial counsel at Paul Weiss, Attorney Shepard, and Assistant United States Attorney Brian Stretch.

**ANALYSIS**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by filing a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under Section 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, defendant must demonstrate the existence of an error of constitutional magnitude which had a

substantial and injurious influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Defendant claims that he was denied effective assistance of counsel at the plea-bargaining stage of his criminal proceedings. In particular, he argues that his trial counsel: (1) failed to provide adequate advice and information on whether to accept an "informal plea offer," (2) failed to "assiduously pursue" a plea deal on his behalf.

### 1. LEGAL STANDARD.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). An attorney's performance is deemed deficient when he or she provides advice that is "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002). "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986).

### 2. PLEA OFFER.

Criminal defendants do not have a constitutional "right to be offered a plea [agreement], . . . nor a federal right that the judge accept it." *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012). "If a plea bargain has been offered, [however,] a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, __ U.S. __, 132 S.Ct. at 1387.

Here, the government and defendant's trial counsel agree that "no plea offer was made by either side at the meeting on June 26, 2009" (Shepard Decl. ¶ 24; Stretch Decl. ¶ 27). Defendant also *agrees* that no formal plea offer was extended to him (Br. at 4, Dkt. No. 1180). He argues, however, that an "informal plea offer" can trigger his Sixth Amendment right to effective

4

assistance of counsel. *See, e.g., United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998). In response, the government argues that a formal plea offer is required.

The attempt to extend *Lafler* to what counsel calls an "informal plea offer" is rejected. Inserting the word "informal" before "plea offer" is a sleight of hand. In reality, there is either a formal plea offer, or in its absence, mere discussions between counsel. Mere conversations are rarely recorded and always subject to interpretation and mis-remembering. It would be a near-impossible burden to require defense counsel to update defendant on each twist and turn in informal conversations. And it would be impossible for the government to reconstruct and prove each such twist and turn in the communication, much less prove that defense counsel passed on the twists and turns to their client, especially years after the fact. Therefore, to transmogrify mere conversation into an "informal plea offer" and then to further say it must be communicated to an accused on pain of Section 2255 relief would be a nifty sleight of hand. *See Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) (petitioner must . . . [prove] a plea agreement was *formally offered* by the government") (emphasis added); *see also Gilchrist v. United States*, 2012 U.S. Dist. LEXIS 140278, at *60 (D. Md. Sept. 27, 2012); *Ramos v. United States*, 2012 U.S. Dist. LEXIS 44611, at *12–13 (D. Mass. Mar. 30, 2012); *Compean v. United States*, 2013 U.S. Dist. LEXIS 168882, at *20–21 (W.D. Ky. Oct. 18, 2013).

If the law were to hold that every "informal plea offer" had to be communicated to defendant, then virtually every jury verdict of guilty would be forever dogged by demands for evidentiary hearings under Section 2255, for it would be a rare case in which no conversations ever transpired between counsel. On the other hand, a formal plea offer is a certain thing, and its existence or non-existence can be proven up at an evidentiary hearing as can whether it was communicated.

The record presented on this motion demonstrates the futility of trying to extend *Lafler* to an "informal plea offer." In an email to co-counsel after meeting with government prosecutors on June 26, 2009, Attorney Shepard stated that the government might consider a Rule 11(c)(1)(C) plea agreement, but the agreement would entail a "wide[] range" of sentencing possibilities tied "a select list of transactions" that the government prosecutors "had yet to

5

identify." Indeed, Attorney Shepard indicated in his email that the meeting was quite brief because the government believed that both sides' "end points . . . [didn't] seem to overlap" (Osterhoudt Decl., Exh. 36). In other words, no plea offer was made because both sides recognized that defendant's refusal to willingly agree to go to jail could not be squared with the government's refusal to consider a plea bargain that did not involve jail time. In his sworn declaration, Assistant United States Attorney Stretch agreed that Attorney Shepard's summary of the June 26 meeting was accurate (Stretch Decl. ¶ 8). After meeting with the government prosecutors, Attorney Shepard told defendant that "the prosecutors were willing to settle [his] case on terms similar to the plea dispositions they had extended to individuals involved in the charges against [him]" and that he should "consider it" (McCall Decl. ¶ 9). Defendant claims that Attorney Shepard did not provide any additional details after he responded that he did not want to go to jail.

Defendant alternatively argues that "he did not discourage further negotiation" after telling his trial counsel that he did not want to go to jail (Reply Br. at 9). Assuming defendant is arguing that his counsel should have pursued additional plea negotiations, our court of appeals has already foreclosed that argument. *Aguilar v. Alexander*, 125 F.3d 815, 820–21 (9th Cir. 1997).

At arraignment, defendant was told what the sentence maximums were. Attorney Shepard told defendant what the government might be willing to consider, which included jail time, but defendant responded that he did not want to go to jail (McCall Decl. ¶ 9). Defendant told his lawyers numerous times that he would not agree to go to jail (Shepard Decl. ¶ 6; Gerzman Decl. ¶ 17; Wells Decl. ¶ 4). Defendant contends that he was never apprised of the federal sentencing guidelines or the fact that his "sentence could be ten years or more," but his trial counsel recall discussing the sentencing guidelines with him and the possibility of over ten years of imprisonment if he were convicted after trial (Oh Decl. ¶ 7; Shepard Decl. ¶ 5). Even assuming, however, that defendant's trial counsel did not "remind" defendant of the possible maximum sentence if he proceeded to trial, there was no need to remind him because he had

6

already been admonished of that fact on the record at arraignment (Reeves Decl., Exh. A, at 4–5). Defendant is a sophisticated individual. For the foregoing reasons, the petition is **DENIED**.

### 2. EVIDENTIARY HEARING.

In addition to the existing record in this case, multiple sworn declarations and supporting documentation were reviewed while evaluating defendant's Section 2255 motion (Dkt. No. 1182). Based on the record in this case, which was expanded in part *sua sponte* by the undersigned judge, no evidentiary hearing is necessary. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989).

### 3. MOTION FOR RELEASE.

Defendant also moves to be released from prison pending final resolution of his Section 2255 motion because he believes that his Section 2255 claim has "a high probability of success." As his Section 2255 motion is denied, his motion for release on bail is **DENIED AS MOOT**.

## CONCLUSION

For the reasons stated above, defendant's Section 2255 motion and related requests for an evidentiary hearing and release on bail are **DENIED**.

**IT IS SO ORDERED.**

Dated: June 9, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE