IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CHARLES McCALL,

    Defendant.

No. C 00-00505 WHA

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

On June 17, 2013, defendant Charles McCall filed a Section 2255 motion to vacate, set aside, or correct his sentence (Dkt. No. 1149). The sole claim asserted in the motion was that "his trial counsel provided ineffective assistance by failing to provide [him] with complete information necessary to make an informed decision whether to accept the government's plea offer" (Dkt. No. 1149, Br. at 29–42). On June 9, 2014, the motion was denied because both sides agreed that the government never extended a formal plea offer to defendant (Dkt. No. 1195 at 4–6). He now moves for a certificate of appealability ("COA"). A COA should be issued if "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Defendant primarily relies on three decisions to argue that reasonable jurists can disagree about whether informal discussions about the possibility of a plea offer can trigger his Sixth Amendment right to effective assistance of counsel: *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), *United States v. Polatis*, 2013 U.S. Dist. LEXIS 39064 (D. Utah Mar. 19, 2013), and

*United States v. Crawford*, 2010 U.S. Dist. LEXIS 87947 (E.D. Wash. July 29, 2010). All three decisions, however, are distinguishable from the instant action.

In *Gordon*, defense counsel did not merely discuss the possibility of a plea offer with the government. The factual context of the action clearly establishes that defense counsel's erroneous advice in a letter to the defendant was given *after* a plea offer was extended by the government; the offer was just not presented in written form. *Gordon*, 156 F.3d at 377. Indeed, the Court of Appeals for the Second Circuit noted that defense counsel represented to the District Court "at a pretrial conference attended by both [the defendant] and the government" that "*the plea offer* [rejected by the defendant] would expose [the defendant] to 'a sentence of eighty-four months.'" *Ibid.* (emphasis added). After the defendant was found guilty, defense counsel realized that he had erroneously told the defendant in the letter that the maximum sentencing exposure was only 120 months, but it was actually 252 to 327 months. Even though the plea offer in *Gordon* was not formally memorialized in writing, the offer clearly contained all essential elements without requiring further negotiation and the details of the offer were stated on the record with both sides present. *Ibid*.

As explained by the June 9 order in this action, the initial discussions between the government and defendant's trial counsel did not progress far enough to establish the essential terms of a possible plea offer (Dkt. No. 1195 at 5–6). Plea agreements are "essentially contracts," *Puckett v. United States*, 556 U.S. 129, 137 (2009), and the government's initial discussions with defendant's trial counsel failed to identify a "list of transactions" or a concrete range of sentences tied to a possible plea offer (Osterhoudt Decl., Exh. 3). The essential elements of a plea offer include whether it covers all the "transactions" underlying the counts in the case as well as a clear range of sentences attached to the offer. Unlike *Gordon*, the initial discussions about the possibility of a plea offer in the instant action did not reach these essential issues. Defendant cannot accept a possible plea offer that requires "further discussion or negotiation" to determine its essential elements. *See, e.g., Montgomery v. United States*, 2013 U.S. Dist. LEXIS 167932, at *11–12 (W.D. Ky. Nov. 26, 2013).

In *Polantis*, Assistant United States Attorney Veda Travis, who was the lead prosecutor, told defense counsel via email, "I would be willing to go to the screening committee [of the United States Attorney's Office] with an agreement whereby Mr. Polatis would plead guilty to only one count of murder-for-hire and we would agree that the judge would sentence him somewhere in the 151-188 month range." *Polantis*, 2013 U.S. Dist. LEXIS 39064 at *3. The government in *Polantis* argued that the plea offer was not binding because it was not yet approved by the Screening Committee and therefore not a "formal offer." *Id*. at *7. The District Court, however, noted that Attorney Travis discussed the plea offer with a member of the Screening Committee and was told that the plea offer was "worthy of presenting to the Screening Committee." *Id.* at *4–5. She also told the District Court that she would not have extended a plea offer that the Screening Committee would reject. *Ibid*. Finally, the District Court focused on a final email that Attorney Travis sent to defense counsel, where she amended and re-extended the plea offer but did not include a disclaimer that the newly-amended plea offer had to be approved by the Screening Committee. *Id*. at *8–9.

Like *Gordon*, *Polatis* is distinguishable because the District Court found that the government "would have accepted its own plea offer [extended by Attorney Travis] . . . [and] also [found] that it would have accepted the plea offer" based on Attorney Travis' testimony that she would not have extended a plea offer that the Screening Committee would reject and the "implicit sign-off" of the plea offer by a senior member of the Screening Committee. *Id*. at *39–41. In other words, the government's plea offer in *Polatis* did not require any additional discussion to determine its essential elements and final approval was essentially assumed. Here, the record precludes a finding that defendant could have accepted a plea offer that only required final approval because no such offer existed.

While defendant points out a previous order to show cause which noted that "defendant's trial counsel has provided evidence that an informal plea agreement existed," a subsequent careful review of existing law and subsequently-submitted evidence clarified that counsel's informal discussions in this action are insufficient to support defendant's Sixth Amendment claim. Contrary to defendant's argument in his request for a COA that the "limitation of the

3

defendant's [Sixth Amendment] rights, and the lawyer's duties, to 'formal' plea offers is not supported by existing law," the June 9 order demonstrated that the overwhelming weight of authority cuts against defendant's position (Dkt. No. 1195 at 5) (collecting cases). *See also United States v. Petters*, 2013 U.S. Dist. LEXIS 171543, at *7–10 (D. Minn. Dec. 5, 2013) ("ineffective assistance may arise only when *formal* plea offers have not been communicated to defendants") (emphasis in original); *Barnes v. United States*, 2013 U.S. Dist. LEXIS 94007, at *23–34 (S.D.N.Y. July 2, 2013) ("[t]he absence of a plea offer is fatal to the ineffective assistance of counsel claims made . . ."); *Elem v. Ryan*, 2013 U.S. Dist. LEXIS 139387, at *55–56 (D. Ariz. Sept. 27, 2013).

*Crawford* is also inapposite to the instant action. In *Crawford*, the government sent a "freetalk letter" to defense counsel and the defendant told his counsel that "he desired to plead guilty." *Crawford*, 2010 U.S. Dist. LEXIS 87947, at *2–4. Defense counsel, however, refused to allow the defendant to plead guilty or engage in "free talk" with the government by providing information, and the defendant was ultimately found guilty. *Ibid*. Eventually, defense counsel was disbarred in part for his lack of diligence, failure to communicate with his clients, and failure to protect his client's interests. *Id*. at 4. In this action, defendant's trial counsel did not ignore a government plea offer or "free talk" offer as the government did not initiate the informal discussions. Instead, defendant's trial counsel initiated the informal discussions, whether on their own accord or by defendant's urging, and both sides recognized that further plea negotiations would be futile given the government's refusal to consider a plea deal that did not involve jail time and defendant's unambiguous statement that he "did not want to go to jail" (McCall Decl. ¶ 9). Four of his trial attorneys individually recall defendant telling them, at various times, that he did not want to go to jail (Shepard Decl. ¶ 6, Gertzman Decl. ¶ 8, Wells Decl. ¶ 4, Silverman Decl. ¶ 12(a)). Given defendant's status as a sophisticated individual who previously was the chairman of the board of directors of a multi-billion dollar company, his repeated statements to his trial counsel that he did not want to go to prison, and the government's refusal to consider a plea offer with no jail time, reasonable jurists could not debate that his trial attorneys' performance of not pursuing further negotiations did not rise to the level of ineffective

4

assistance of counsel. None of defendant's other cited authority stand for the proposition that informal discussions about the possibility of a plea offer, which do not establish sufficient concrete elements of such an offer, will support a colorable Sixth Amendment claim.

Finally, an evidentiary hearing is not required. Defendant admits that a formal plea offer was not extended by the government, which ends the Sixth Amendment *Strickland* analysis (Dkt. No. 1195 at 5) (collecting cases). Even so, the June 9 order noted that the Court expanded the record by evaluating supplemental declarations, and our court of appeals has "held that rather than conduct a hearing, courts may use discovery or documentary evidence to expand the record . . . [and] may also use common sense." *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989).

For the foregoing reasons, defendant's request for a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 7, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5